IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**NATHANIEL GRANT**                                                                                           **PLAINTIFF**

**V.**                                                     **NO. 4:19-CV-5-DMB-JMV**

**WASHINGTON COUNTY, MISSISSIPPI
(WASHINGTON COUNTY REGIONAL
CORRECTIONAL FACILITY), et al.**                                          **DEFENDANTS**

**ORDER**

Before the Court is the defendants' motion for summary judgment. Doc. #110.

**I**
**Procedural History**

On January 3, 2019, Nathaniel Grant filed a complaint in the Circuit Court of Washington County, Mississippi, against "Washington County, Mississippi (Washington County Regional Correctional Facility)" and "John Does 1-15." Doc. #2. On January 10, 2019, Washington County, asserting federal question jurisdiction, removed Grant's state court action to the United States District Court for the Northern District of Mississippi. Doc. #1 at 1–3.

With leave of the Court, Grant filed an amended complaint on April 3, 2019, against "Washington County, Mississippi (Washington County Regional Correctional Facility);" "Jailers Mary Harvey, Schemilla Howard, Sharonda Morris, Beatrice Wallace, Lekecia Powell, Darrin Blumenburg, Zeddie Rice, and Steven Franklin, in their individual and official capacity;" and "John Does 1-7." Doc. #31. Grant alleges that on May 14, 2017, he was wrongfully arrested and detained, taken to the Washington County Correctional Facility ("WCRCF"), "almost" immediately assaulted by six to eight inmates, and while he "was being savagely beaten, correctional officers … failed to render aid or stop the assault." *Id.* at PageID #173.

The first four counts of the amended complaint, each of which includes the title "Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983," are subtitled, respectively, "General Allegations," "Failure to Implement Appropriate Policies, Customs and Practices," "Refusing or Neglecting to Prevent," and "False Arrest." Doc. #31 at PageID #175–79. The remaining counts assert claims for "Bystander Liability," "Deliberate Indifference/Reckless Disregard," and "Delay/Denial of Medical Care." *Id.* at PageID # 180–81.

On September 17, 2019, the parties stipulated to the dismissal without prejudice of Howard, Morris, Wallace, Powell, and Rice. Doc. #78.[1] On December 5, 2019, Washington County, Franklin, Blumenburg, and Harvey moved for summary judgment. Doc. #110. The motion for summary judgment is fully briefed.[2]

## II
## Summary Judgment Standard

Summary judgment is proper when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. R. 56(a). "A genuine issue of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party." *Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014). "A court must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the nonmovant. A court should enter summary judgment against a party when it has

---

[1] The stipulation document is signed as "approved" by Grant's counsel and as "agreed" by counsel for Washington County. Doc #78 at PageID #307. There is no express signature on behalf of the individual defendants mentioned in the document. Since Washington County and those individual defendants are represented by the same counsel, the Court presumes the signature by Washington County's counsel was intended to be on behalf of those individual defendants as well.

[2] Grant requested an extension to respond to the motion on December 17, 2019, Doc. #116, and then filed a response two days later, Doc. #119. The Court granted the motion for extension on December 20, 2019, extending Grant's response deadline to December 26, 2019. Doc. #121. The defendants replied to Grant's original response on December 23, 2019. Doc. #122. Three days later, Grant filed a corrected response, Doc. #124, to which the defendants replied the next day, Doc. #126. Because Grant's corrected response was filed before the deadline, and the defendants did not object to the filing in their reply, the Court considers Grant's corrected response as his operative response. The Court will thus consider the reply to the corrected response as the operative reply.

2

the burden of proof at trial yet fails to establish an element of its case." *Sanchez v. Young Cnty.*, 956 F.3d 785, 791 (5th Cir. 2020) (citation omitted).

### III
### Relevant Facts

On May 14, 2017, Grant was arrested by the Greenville Police Department on an outstanding warrant. Doc. #110-1 at 9–11. He was taken to WCRCF. *Id.* at 10. Upon arrival to WCRCF, Blumenburg handled Grant's initial booking. Doc. #110-3 at 21. This included searching Grant for weapons and providing him a uniform. *Id.* Additionally, Blumenburg asked Grant if he had any gang affiliation and what side of town he was from in an effort to put him "with some people that he knew … so they can cover for him … so he wouldn't get jumped." *Id.* at 22. Grant told Blumenburg that he was not a gang member and was from the north end, so Blumenburg placed him in D Pod "with the north end guys." *Id.*

Once Grant entered the pod, he was approached by another inmate who asked if he was gang affiliated and Grant responded that he was not. Doc. #110-1 at 17. The inmate then showed Grant to his bunk and Grant put his belongings on it. *Id.* Two minutes later, four or five other inmates in the pod began to beat Grant with broom handles, a plastic lid, and another unidentified item. *Id.* at 18–19, 25.

The length of the attack and how quickly the officers responded are in dispute. Grant contends that it took the guards "15 to 20 minutes to make it back" to the pod to assist him and that the attack did not stop until the officers returned to the pod. *Id.* at 19. Franklin testified that he saw Grant coming out of booking; saw Blumenburg walking back up front after placing Grant in the pod; about three minutes later, heard yelling alerting him that something was wrong; and responded to Pod D within two minutes, found Grant, and called for all available officers. Doc. #110-4 at 34–37. Blumenburg testified that after placing Grant in the pod, he returned to booking;

3

got a call five minutes later for all officers to come to Pod D; and returned to the pod in "[n]o more than a minute and thirty seconds." Doc. #110-3 at 24–25.

Franklin and Blumenburg pulled Grant out of the pod, and Blumenburg took Grant back to booking and called Harvey, who was the officer in charge. Doc. #110-4 at 39–40; Doc. #110–3 at 29–30; Doc. #110-5 at 16. Harvey received the call at 4:40 p.m. Doc. #110-5 at 16. Harvey called her lieutenant and was instructed to call Greenville Police because Grant was a city inmate rather than a county inmate. *Id*. at 28–30. Harvey called Greenville Police to request medical assistance for Grant. *Id.* at 26, 30. A Greenville police officer arrived at the facility and transported Grant to the hospital. Doc. #110-1 at 21.

According to Grant, there was "about 30 minutes" between his removal from the pod and transportation to the hospital. Doc. #110-1 at 31. However, Harvey testified that medical assistance did not arrive until 6:10 p.m., an hour and a half after she was alerted to the attack. Doc. #110-5 at 26. In the time between the attack and his transportation to the hospital, Grant did not receive any ice for swelling or any medical treatment, and there was no nurse on site to provide aid. Doc. #110-1 at 31; Doc. #110-5 at 31. Harvey placed two additional calls to Greenville Police because she thought they should have already arrived. Doc. #110-5 at 43–44.

Grant suffered injuries to his back, hand, arm, and orbital bone. Doc. #110-1 at 22–23. Surgery was required to treat his injuries and Grant still requires pain medication. *Id.* at 23. Grant spoke to a counselor after the incident because of the trauma of the attack. *Id.* at 28.

## IV
## Analysis

The defendants argue summary judgment is proper because (1) Grant "fails to provide any evidence of a constitutional violation by any Defendant;" (2) "all individual Defendants should be granted qualified immunity because their actions were not objectively unreasonable in light of

clearly established law;" and (3) Grant "fails to offer any evidence of inadequate policies or customs or failure to train." Doc. #110 at 1.

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Zadeh v. Robinson*, 928 F.3d 457, 463–64 (5th Cir. 2019). "A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Voss v. Goode*, 954 F.3d 234, 238 (5th Cir. 2020). A defendant satisfies this burden by "establishing that the challenged conduct was within the scope of his discretionary authority," meaning the conduct that occurred was a "non-ministerial act[] within the boundaries of his official capacity." *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019).

"A plaintiff must make a two-part showing to overcome a qualified immunity defense. First, a plaintiff must show that the official violated a statutory or constitutional right; second, she must show that the right was clearly established at the time of the challenged conduct." *Voss*, 954 F.3d at 238. A court "can analyze the prongs in either order or resolve the case on a single prong." *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020).

The individual defendants have asserted qualified immunity and there is no dispute that they were acting within the scope of their discretionary authority at the time of the related events. Accordingly, the burden is on Grant to show there is a genuine issue of material fact that the individual defendants violated a clearly-established statutory or constitutional right.

### A. Constitutional Violation

Grant's amended complaint alleges that the individual defendants violated his Fourth, Fifth, Eighth, and Fourteenth Amendment rights. Doc. #31 at PageID #170, #176, #179.

*1. False arrest*

The defendants argue Grant's false arrest claim fails because not only was Grant's arrest "supported by a properly issued arrest warrant," "none of the Defendants were involved at all in the arrest." Doc. #111 at 12. Grant's response focuses on a lack of probable cause for his arrest and detention. Doc. #125 at 4–5.

To establish a § 1983 claim, "[a] plaintiff must establish that the defendant was either personally involved in the [constitutional] deprivation or that his wrongful actions were causally connected to the deprivation." *James v. Texas Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008). It is undisputed Grant was arrested by Greenville Police. Grant does not allege that the individual defendants, who detained him after his arrest, were involved in the actual arrest. Accordingly, he has failed to state a false arrest claim.[3]

*2. Excessive force*

The defendants also argue Grant's excessive force claim[4] under the Fourth Amendment fails because "there is no allegation or material issue that Grant was assaulted by a jailor." Doc. #111 at 12. Grant's response argues that "[t]he Defendants bear the burden to prove that no genuine issues of material fact exist with regard to Plaintiff's excessive force claim. Consequently, summary judgment is [sic] this matter is not appropriate." Doc. #125 at 5.

"To establish a Fourth Amendment excessive-force claim, a plaintiff must show that she suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive

---

[3] To the extent Grant's complaint can be read to assert a wrongful detention claim, the claim must fail. Although Grant alleges that there was "no active warrant outstanding" at the time of his arrest, Doc. #31 at PageID #173, he has not presented any evidence that the defendants "knew or should have known that [he] was wrongly detained." *Harris v. Payne*, 254 F. App'x 410, 420–21 (5th Cir. 2007) (plaintiff did not establish a constitutional violation where defendants had access to exonerating information but plaintiff failed to show that the defendants were aware of or should have been aware of the information).

[4] The excessive force claim is alleged under the "General Allegations" count. Doc. #31 at PageID #175.

6

to the need and that (3) the force was objectively unreasonable." *Westfall v. Luna*, 903 F.3d 534, 547 (5th Cir. 2018) (internal quotation marks omitted). There is no dispute that Grant suffered an injury. However, Grant's testimony indicates that he was attacked by inmates rather than any of the individual defendants. As Grant does not allege that any of the individual defendants used any force against him, his excessive force claim must fail.

### 3. Deliberate indifference

The defendants argue that Grant "fails to provide any evidentiary proof that (1) Defendants were deliberately indifferent in requesting an ambulance or (2) that the alleged delay caused substantial harm" to Grant in violation of his Fourteenth Amendment rights. Doc. #111 at 16. Grant responds that the defendants did not meet their burden of providing evidence they did not act with deliberate indifference when they "did not immediately notify medical personnel per jail protocol" and "provided no first aid" or "ice to control his swelling." Doc. #125 at 7.

> The Supreme Court has held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment. Although pretrial detainees … are not protected by the Eighth Amendment, we have held that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement.
>
> In *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), the Supreme Court explained that to be deliberately indifferent to an inmate's need in violation of the Eighth Amendment, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (cleaned up).

The individual defendants argue that they did not act with deliberate indifference because they "immediately recognized a need for medical treatment and took the proper steps to get Plaintiff the treatment he needed." Doc. #111 at 16. Grant responds that "it is the Defendants'

7

burden to provide medical records and other evidence to rebut Plaintiff's claim of deliberate indifference. They have provided no evidence to support their contentions that their inaction in rendering medical treatment did not lead to any constitutional violations." Doc. #125 at 7. Grant fails to recognize, however, that because the individual defendants asserted qualified immunity, it is his burden to show that they violated his constitutional rights by acting with deliberate indifference and that "substantial harm resulted from [their] alleged deliberately indifferent conduct." *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020).

With respect to medical treatment, "[a] plaintiff can show deliberate indifference by showing that an official refused to treat her, ignored her complaints, intentionally treated her incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Luna*, 903 F.3d at 551. Here, it cannot be said that Harvey acted with "wanton disregard" for Grant's medical needs because Harvey called for medical assistance and placed two additional calls when she thought it was taking too long. Even if the officers' failure to provide ice to Grant to reduce swelling while waiting for the ambulance is considered deliberate indifference, Grant has not shown that he suffered substantial harm as a result. *See id.*

Concerning the actual attack, although the record shows that the defendants were aware of gang activity within the facility, it also reflects that Blumenburg, based on Grant's response to his questioning, understood that Grant was not gang affiliated and placed him in a pod with inmates who grew up in the same neighborhood in an attempt to protect him. Because the record does not reflect that the defendants were aware of an individualized risk to Grant, it cannot be said that they acted with deliberate indifference to his safety by placing him in D pod. *See Williams v. Banks*, 956 F.3d 808, 812 (5th Cir. 2020) (defendants, who moved inmate into protected zone with

8

plaintiff, did not act with deliberate indifference because they did not know the inmate was a member of a rival gang that was a known threat to the plaintiff).

Regarding the guards' response to the attack, Grant's amended complaint alleges that "[w]hile Mr. Grant was being savagely beaten, correctional officers were standing in the hallway outside the cell and they failed to render aid or stop the assault." Doc. #31 at PageID #174. However, to establish deliberate indifference, Grant must introduce evidence that the defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists." *Hyatt*, 843 F.3d at 177. When a plaintiff alleges deliberate indifference based on the failure to intervene in an assault by a fellow inmate, a showing of deliberate indifference necessarily requires evidence that the defendant officers *knew* the attack was occurring and responded to the knowledge in an objectively unreasonable manner. *See Longoria v. Texas*, 473 F.3d 586, 593 (5th Cir. 2006) (in failure to intervene case, holding "[n]o liability exists … if an official reasonably responded to a known substantial risk"); *Johnson v. Boyd*, 568 F. App'x 719, 722 (11th Cir. 2014) ("While the allegations describing Hanley's physical attack are sufficient to show an objective risk of injury, without allegations describing the duration of the fight or the defendants' response, it is impossible to determine whether any defendant was subjectively aware of the risk of injury or whether any defendant responded to the risk of injury in an objectively unreasonable manner.").

Here, Grant has failed to provide any evidence that the individual defendants knew of the attack and allowed it to continue after becoming aware of it. Franklin testified that he heard inmates yelling and "knew something was happening;" he checked "the other two pods, and [he] walked to … D pod;" he saw Grant on the floor; and he immediately entered the pod and called for all available officers. Doc. #110-4 at 35–36. Blumenburg testified that after placing Grant in

9

the pod, he returned to booking; he received a call for all available officers to come to D pod five minutes later; and he returned to D pod in a minute and thirty seconds. Doc. #110-3 at 24–25. Put differently, upon becoming aware of an occurrence in the vicinity, Franklin began an investigation and, upon learning of the attack on Grant, immediately called for help. Blumenburg responded to this call immediately. These responses were eminently reasonable and preclude a finding of deliberate indifference. *See Rios v. Scott*, 100 F. App'x 270, 272 (5th Cir. 2004) ("Officer Sippel is entitled to qualified immunity because there is no clearly established constitutional right for an officer to immediately intervene when an armed inmate attacks another inmate, as the officer may need to call for backup or seek to avoid her own serious injury.") (collecting cases); *Coleman v. LeBlanc*, No. CV 19-395, 2020 WL 4679545, at *5 (M.D. La. July 28, 2020) ("The case law consistently holds that deliberate indifference does not exist in situations where officers have taken some steps to halt the violence."). As such, Grant has failed to carry his burden and summary judgment must be granted.

## 4. Equal protection

The Fourteenth Amendment's Equal Protection Clause provides that "[n]o state shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A plaintiff asserting an Equal Protection Clause claim under § 1983 "must either allege that (a) a state actor intentionally discriminated against him because of membership in a protected class, or (b) he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Gibson v. Tex. Dep't of Ins.-Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) (cleaned up).

The defendants argue Grant's equal protection claim[5] fails because Grant "failed to allege any facts that he was a member of a protected class, any specific act of discrimination, or discriminatory motive on the part of any Defendant." Doc. #111 at 18.  In response, Grant provides law related to equal protection but fails to provide any argument how it applies to this case or cite any evidence in support.  *See* Doc. #125 at 9.  Because Grant failed to provide any evidence of an equal protection violation, his claim must fail.

### 5. Bystander liability

"[A]n officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."  *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (internal quotation marks omitted).  Grant argues that the defendants should be liable because of their inaction in preventing the attack.  However, bystander liability requires that the defendants "*know* that a fellow officer is violating an individual's constitutional rights."  *Id.* (emphasis added).  As Grant failed to show that any of the defendants violated his constitutional rights by allowing the attack to continue, it follows that they could not be aware of a violation by the other defendants.  Grant's bystander liability claim fails.

### 6. Summary

Grant has not carried his burden of establishing a constitutional violation by any of the individual defendants.  As such, the Court does not reach the second step in the qualified immunity analysis and summary judgment is proper.  *See Freeman v. Gore*, 483 F.3d 404, 410–11 (5th Cir. 2007) (qualified immunity analysis ends if there is not constitutional violation).

---

[5] The equal protection claim is alleged under the "General Allegations" count.  Doc. #31 at PageID #176.

### B. Municipal Liability

Washington County argues that it is not liable because Grant failed to "identify any policy maker in his complaint or throughout discovery;" its policies are constitutional; the individual defendants were "fully certified at all relevant times" and "properly trained;" and Grant failed to identify prior incidents indicating a custom. Doc. #111 at 24–26. Grant argues that Washington County's policy of having the city provide an ambulance for city inmates resulted in a violation of his constitutional rights. Doc. #125 at 13. Washington County replies that Grant "does not identify the relevant policy maker" or "provide a copy of any written policies." Doc. #126 at 5.

"To establish municipal liability pursuant to § 1983, a plaintiff must demonstrate three elements: a policymaker; an official policy, and a violation of constitutional rights whose moving force is the policy or custom." *Shumpert v. City of Tupelo*, 905 F.3d 310, 316 (5th Cir. 2018) (internal quotation marks omitted). A municipality is not liable if the plaintiff fails to establish a constitutional injury. *Windham v. Harris Cnty.*, 875 F.3d 229, 243 (5th Cir. 2017) ("[W]ithout an underlying constitutional violation, an essential element of municipal liability is missing."). Grant failed to establish any evidence of a constitutional violation related to the alleged delay in care, the only claim relevant to the policy identified by Grant. Accordingly, Washington County cannot be subjected to municipal liability.

### V
### Conclusion

The defendants' motion for summary judgment [110] is **GRANTED**. A final judgment consistent with this opinion will issue separately.

**SO ORDERED**, this 30th day of September, 2020.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**